*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* DUSETTE/BEERY, Minors.

UNPUBLISHED
June 22, 2023

No. 364143
St. Clair Circuit Court
Family Division
LC No. 21-000211-NA

Before: MARKEY, P.J., and JANSEN and K. F. KELLY, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his minor children, JMD, GLB, and BSB. Finding no errors warranting reversal, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In November 2021, petitioner the Department of Health and Human Services (the "Department") filed a petition requesting that the trial court take jurisdiction over the children. The petition alleged that respondent: (1) was arrested for domestic violence against JB, the mother of the minor children, respondent subsequently absconded from probation, and respondent had an active warrant for his arrest; (2) violated the no contact order imposed against him by living with JB for the past two weeks; (3) had recently been involved in a domestic violence incident, which resulted in injuries to JB's face and neck; and (4) admitted to using methamphetamine. The petition further alleged that Child Protective Services ("CPS") conducted numerous visits of respondent's residence and observed excessive filth and garbage in the kitchen area. In addition, respondent subjected the children to medical neglect, which was demonstrated by JMD's need for significant dental work to repair his permanent teeth, in addition to mental health treatment; and GLB's and BSB's continued issues with their vision, despite multiple CPS referrals to an ophthalmologist. Following a preliminary hearing, the trial court authorized the petition, removed the minor children from respondent's care, and ordered respondent to complete the recommended programs.

After the initial petition was authorized, on two separate occasions respondent was incarcerated for violating his terms of probation related to domestic violence. Respondent also repeatedly missed or tested positive for marijuana and methamphetamines during required drug screenings and was unable to maintain consistent employment and housing. Respondent did not

-1-

attend parenting classes and, during supervised visits with the children, was intoxicated, used inappropriate language, and argued with JB in front of the children.

In August 2022, Sarah Mielke, a foster care case manager, filed a permanent custody petition to terminate respondent's parental rights to the children under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist), (g) (failure to provide proper care or custody), and (j) (reasonable likelihood of harm if returned to parent). The petition alleged that (1) in June 2022, eviction proceedings was filed against respondent, which constituted the sixth legal eviction case against respondent since 2019; (2) at the time of the eviction, respondent had shut off notices for gas and electricity, and respondent was subsequently homeless; (3) Rent-A-Center filed a small claims case against respondent due to respondent's failure to pay; (4) respondent was unemployed and failed to maintain consistent employment throughout these proceedings; and (5) during parenting time, respondent spent the majority of his time with GLB, used inappropriate language around the minor children, and arrived intoxicated to visitations on multiple occasions. The petition also alleged that respondent failed to participate in any parent educational programs, and respondent was not currently engaged in any recommended substance use or mental health treatment services. The petition additionally alleged that respondent was offered 28 drug screenings, missed 18, tested negative twice, and tested positive for controlled substances eight times.

Following an evidentiary hearing on November 21, 2022, the trial court determined that the Department presented clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). The trial court also determined that the Department established, by a preponderance of the evidence, that termination of respondent's parental rights was in the best interests of the children. This appeal followed.

## II. STATUTORY GROUNDS

Respondent argues that the trial court clearly erred when it determined that the Department presented clear and convincing evidence to support termination of respondent's parental rights. We disagree.

## A. STANDARDS OF REVIEW

"To terminate parental rights, a trial court must find by clear and convincing evidence that at least one statutory ground under MCL 712A.19b(3) has been established." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013). This Court reviews a trial court's factual findings and ultimate determinations on the statutory grounds for termination for clear error. *In re White*, 303 Mich App 701, 709; 846 NW2d 61 (2014). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004).

## B. ANALYSIS

Grounds for termination exist under MCL 712A.19b(3)(c)(*i*) if "[t]he conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be

rectified within a reasonable time considering the child's age." *In re White*, 303 Mich App at 710, citing MCL 712A.19b(3)(c)(*i*). "182 or more days [must] have elapsed since the issuance of an initial dispositional order." MCL 712A.19b(3)(c). A parent's failure to resolve issues of substance use, or a parent's continued inability to provide adequate housing and financial support for a minor child, constitutes clear and convincing evidence that termination is appropriate under the cited statutory ground. *In re Frey*, 297 Mich App 242, 244-246; 824 NW2d 569 (2012). A parent's repeated positive or missed drug screenings, and lack of engagement with substance use counseling services, may also demonstrate that termination of parental rights is warranted under MCL 712A.19b(3)(c)(*i*). *In re Atchley*, ___ Mich App at ___; ___ NW2d ___ (2022) (Docket Nos. 358502 & 358503), slip op at 6.

It is undisputed that more than 182 days have elapsed between the initial dispositional order issued on January 21, 2022, and the order terminating respondent's parental rights on November 21, 2022. Therefore, the issue on appeal is whether the conditions that led to adjudication continued to exist and, if so, whether there was a reasonable likelihood that they will be rectified within a reasonable time considering the young children's ages. We conclude that the trial court did not clearly err when it found clear and convincing evidence that the conditions that led to adjudication continued to exist, and there was no reasonable likelihood that they will be rectified within a reasonable time considering the ages of the children.

Respondent's substance use, inadequate housing, lack of employment, mental health concerns, history of domestic violence, and physical neglect of his minor children led to the initial adjudication. The Department presented detailed testimony concerning respondent's continued substance use, drug screening inconsistencies, and repeated refusal to participate in recommended treatment services for methamphetamine and marijuana during the November 21, 2022 evidentiary hearing. Mielke testified that between May 25, 2022 and September 20, 2022, respondent did not participate in 21 out of 35 drug screenings, and respondent tested positive for controlled substances for 12 of the completed screenings. Moreover, while respondent solely tested positive for marijuana for six of the drug screenings, the remaining six screenings were positive for methamphetamine and amphetamines. Respondent further tested positive for methamphetamine as recently as September 6, 2022. Mielke also testified regarding respondent's inappropriate behavior during parenting time because of the severity of respondent's substance use. Mielke noted there was a strong odor of marijuana during respondent's visitation on March 17, 2022, and respondent admitted that he had marijuana in his pocket. Moreover, on June 15, 2022, and July 19, 2022, respondent struggled to stay awake during parenting time and informed Mielke that he used "bad meth" and needed medical treatment. Mielke also observed respondent under the influence when he fell asleep during visitation on August 24, 2022.

Respondent was also obligated to participate in a variety of outpatient services, and while respondent did complete the requested substance use assessment in June 2022, respondent did not comply with the recommendations in the evaluations, which included supportive parenting, mental health, substance abuse, and psychiatric evaluation services. Mielke testified that respondent only completed an intake with community mental health services after the filing of the supplemental petition. While respondent asserts that he did not use methamphetamine in the two months before termination of his parental rights, respondent continuously failed to address the repercussions of his severe amphetamine use disorder, severe cannabis use disorder, bipolar disorder, and antisocial personality disorder.

-3-

Respondent argues that his three attempts at inpatient substance use treatment demonstrated his intent to comply with the case service plan, however, respondent repeatedly relapsed after each stay at the rehabilitation facility, and respondent did not follow the Department's recommendations concerning appropriate substance use treatment. See *In re Sanborn*, 337 Mich App 252, 274; 976 NW2d 44 (2021) (stating that even if a respondent has participated in all the services that the Department has offered, "mere participation is not the same as overcoming the barriers in place"). While respondent may have achieved limited progress, the trial court did not clearly err by concluding that the conditions leading to removal of the children continues to exist and there is no reasonable likelihood that it will be rectified within a reasonable time, particularly given that substance use has plagued respondent for at least nine years.

Respondent's housing instability, environmental neglect, and irregular employment also led to removal of the children. The original petition detailed the deplorable state of respondent's residence in November 2021, when CPS observed that (1) the kitchen floor was covered in dirt, mud, rotting food, and garbage; (2) an opened garbage bag was overflowing with trash, and the air was swarming with flies; (3) the countertops were covered in dirty plates containing decaying food, opened soda cans, and general filth; and (4) the stove top and burners were "caked with grease and old food." It was evident at the termination hearing that respondent failed to rectify the inadequate condition of his housing. Mielke stated:

Sometimes it was better than others. The last time—I believe it was the last time that I was there, my boss came with me and there was feces up—piles of feces on the floor that we had to tell them to pick up, dishes in the sink. There was always something going on with the kitchen needing to be repaired. And [respondent] and [JB] saying that their landlord was either repairing it or wouldn't repair it. The kids['] rooms were set up appropriately for them but there was still dishes in the sink. And, at the time—and when I say dishes in the sink, it was an excessive amount of dirty dishes also on the stove. There was [sic] dirty dishes, bags of garbage piled up on the back deck. And, at the time of the eviction, I was provided with pictures of the things that were removed from their home because essentially they lost everything. And there were—there was a table with cuss words carved into it, and paint, and just dirt and everything. The mattresses were all covered in filth. And there was so much stuff removed from that house that the front curb had proceeded to go into—they had to load stuff in the back alley behind the house because there was not enough room for all the garbage on the curb.

Respondent was subsequently evicted from his residence, which constituted his sixth legal eviction since 2019. At the November 21, 2022 evidentiary hearing, Mielke also noted that respondent recently informed her that "he was sleeping on a toddler mattress in a back room at a friend's house," and respondent had been essentially homeless since August 2022. Moreover, throughout the entirety of the proceedings, respondent failed to obtain and maintain a legal source of income for a minimum of three consecutive months, and respondent did not consistently provide documentation of pay stubs to the Department.

Respondent contends that while he had a history of domestic violence, there was no indication that this issue continued to exist at the time of the termination hearing because of the lack of new allegations concerning physical violence between himself and JB. However,

-4-

respondent did not demonstrate that he engaged in any services to address domestic violence in his familial or personal relationships, particularly given the extent of the allegations in the original petition. Moreover, while there may have been no new reports concerning any physical altercations between respondent and another party, respondent continued to display concerning behavior toward JB and his minor children. The Department presented testimony concerning one incident following parenting time during which respondent started yelled at JB and used inappropriate language in front of JMD when talking to his mother-in-law.

Respondent had ample time to address the issues leading to the removal of his children, but approximately a year after the filing of the initial petition, respondent opted to continuously decline court-ordered treatment services. Extending reunification efforts at this point in time, after respondent already demonstrated that he is incapable of providing care and custody for his minor children, is not justifiable. Therefore, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent will be able to rectify these conditions within a reasonable time given the ages of the children.[1]

## III. BEST INTERESTS

Respondent next argues that the trial court clearly erred when it determined that termination of respondent's parental rights was in the best interests of the children. We disagree.

## A. STANDARDS OF REVIEW

"Even if the trial court finds that the Department has established a ground for termination by clear and convincing evidence, it cannot terminate the parent's parental rights unless it also finds by a preponderance of the evidence that termination is in the best interests of the children." *In re Gonzales/Martinez*, 310 Mich App 426, 434; 871 NW2d 868 (2015). This Court reviews a trial court's determination of best interests for clear error. *In re Sanborn*, 337 Mich App at 276. "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App at 296-297.

## B. ANALYSIS

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). In making its determination, the trial court "should weigh all the evidence available to it," and may consider

> the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the

---

[1] Because the trial court only needs to find by clear and convincing evidence that one statutory ground for removal exists, we need not address the trial court's additional statutory justifications for terminating respondent's parental rights. See *In re Moss*, 310 Mich App at 80.

parent's home. Other considerations include the length of time the child was in care, the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all, and compliance with the case service plan. [*In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (quotation marks and citations omitted).]

Moreover, "[a] child's placement with relatives is a factor that the trial court is required to consider." *In re Gonzales/Martinez*, 310 Mich App at 434. While placement with a relative weighs against termination, it is not dispositive because a trial court "may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests." *In re Olive/Metts Minors*, 297 Mich App 35, 43; 823 NW2d 144 (2012). In the majority of cases, it is in the child's best interests to be placed with his or her siblings. *Id.* at 41-42.

The trial court did not clearly err when it determined that termination of respondent's parental rights was in the best interests of the children. While respondent argues that his children are bonded to him, and he is capable of providing for their care and custody, the entire evidentiary record demonstrates otherwise. Respondent's failure to demonstrate parenting ability weighs in favor of terminating respondent's parental rights. Mielke testified that respondent had not completed parenting classes more than year into this case at the time of termination hearing, which was one of the most basic and fundamental aspects of the case service plan. While respondent consistently participated in parenting time, there were numerous concerns regarding inappropriate behavior between JB and respondent during scheduled visitations.

Respondent asserts that the testimony presented at the termination hearing establishes the deep bond between respondent and his children, and that there were minimal concerns about respondent's parenting skills. While it is true that Mielke testified that respondent's parenting skills appeared generally appropriate *when sober*, and there was an apparent bond between respondent and the children, there were also concerns about respondent's use of inappropriate language during parenting time, in addition to respondent arguing and discussing inappropriate topics in the presence of the children. Mielke also stated that while JMD loved respondent, he suffered significant trauma under respondent's care, and JMD felt "guilty for the things that have happened because of the things that are said to him" by respondent. Mielke also shared that while GLB appeared bonded with respondent, the bond did not appear beneficial to GLB because she displayed regressive behaviors following visitations with respondent, and GLB "want[ed] to be that little baby again instead of being a big girl." Additionally, BSB did not appear bonded to respondent, particularly when compared to BSB's sense of safety and security during interactions with his foster parents. Mielke further noted that GLB and BSB would suffer from "wetting accidents" and behavioral changes following supervised parenting time with respondent. See In re Moss, 301 Mich App at 89 ("[A]t the best-interest stage, the child's interest in a normal family home is superior to any interest the parent has.").

Moreover, despite respondent's extensive history of domestic violence, respondent failed to avail himself of domestic violence counseling, individual therapy, or family counseling to address concerns related to the matter, or participate in any services targeting respondent's broader inability to provide for the care and custody of the children. The Department considered guardianship in lieu of termination of respondent's parental rights, however, the children's need for permanence, stability, and structure outweighed respondent's minimal compliance with the

case service plan. The Department also repeatedly attempted to find a joint home for the children, however, ongoing placement efforts demonstrated that the children did better separately. All three children have experienced physical and emotional harm since their initial removal and required extensive therapy and treatment, all while respondent committed numerous probation violations, neglected the case service plan, and failed to obtain adequate housing and employment.

As the trial court noted, the termination of a respondent's parental rights is not required if the child is placed with relatives, and this factor weighs against termination. However, this Court has repeatedly held that a trial court's finding that termination was in the best interest of a child is not clearly erroneous if the parent has not successfully addressed their substance use and mental health issues, and is not motivated to make the necessary changes to address those issues. See *In re Gonzales/Martinez*, 310 Mich App at 435 (the respondent-mother's failure to resolve her substance abuse, and attend counseling and treatment sessions, justified the termination of her parental rights despite the child's relative placement); see also *In re Atchley*, ___ Mich App at ___; slip op at 7 (stating that, although the child was placed with a relative, the respondent-mother's lack of progress toward reunification, including her ongoing and unrectified substance use issues, established that termination was in the child's best interests). In the present case, JMD is the only child in relative placement because he is living with his maternal grandmother. Respondent has had ample time to comply with the case service plan and rectify his substance use through the numerous inpatient and outpatient programs offered by the Department. Unfortunately, respondent has continually rejected availing himself of the recommended services and failed to make progress in his substance-abuse recovery in order to provide proper care and custody for any of his children.

JMD, GLB, and BSB are thriving in their current placements and, despite living separately, their respective foster parents have made efforts to allow the children to meet on a consistent basis. The children are in secure, structured, and safe environments. All of the foster parents are willing to adopt and provide for the child in their respective care long term. We agree with the trial court that continued reunification efforts, at this point in time, are outweighed by the minor children's need for stability, permanency, and finality. Therefore, the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of the children.

Affirmed.

/s/ Jane E. Markey
/s/ Kathleen Jansen
/s/ Kirsten Frank Kelly

-7-